UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | No. CR 05-5828 RBL |
| Plaintiff, | ) | |
| | ) | DEFENSE SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| | ) | |
| JUSTIN SOLONDZ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant Justin Solondz pled guilty to conspiracy to commit arson and a substantive count of arson of a building used in interstate commerce, respective violations of 18 U.S.C. §§371 and 844(I), for his involvement in the destruction of the Center for Urban Horticulture at the University of Washington in May 2001. The parties agree on the general application of the sentencing guidelines and the holistic factors of 18 USC § 3553(a) in proposing an agreed sentence of seven (7) years.

A sentencing hearing is scheduled for March 16, 2012.

**1. Sentencing Recommendation**

Based on the circumstances of the case and regardless of the advisory sentencing guideline range that the courts deems applicable, the defense joins the government in recommending that the court impose the following sentence:

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

1. Seven (7) years of incarceration;

2. Restitution of $ 6,092,649.95;

3. Three (3) years of supervised release with standard conditions;

4. Because of the enormity of restitution, all non-mandatory financial penalties should be waived.

**2.     Objection to Presentence Report**

The defense accepts the advisory guideline computation of the Presentence Report but believes the Criminal History Category VI mandated by USSG §3A1.4(a)[1] greatly overstates his criminal history and is an additional basis for a downward departure, a downward variance, and an exception to its use as a factor in his Bureau of Prisons security classification.  As demonstrated below, a full consideration of the

---

[1] USSG §3A1.4 applies 12 levels and an automatic CHC VI to "federal crimes of terrorism", defined at 18 USC §2332b(g)(5) in substantial part as offenses "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct".  Generally, even prior to *Booker*, to the extent a defendant's offenses were not typical (out of the heartland) "terrorist" activities, the court had discretion to depart downward. See *United States v. Garey*, 383 F.Supp. 1374, 1378-79 (M.D. Ga. 2005)(although enhancement applied to defendant based on threats to blow up a city hall and other structures, a departure from the guidelines was warranted), *rev'd on other grounds*, 483 F.3d 1159 (11th Cir. 2007).  USSG §4A1.3(b) of the current version of the guidelines explicitly provide that a downward departure is warranted where the criminal history category substantially over-represents criminal history/propensity.  Other cases support departures/variances on the basis of an automatic CHC VI over-representing a defendant's criminal history/propensity to commit new crimes.  See *United States v. Sanchez*, 517 F.3d 651, 662-67 (2d Cir. 2008); *United States v. Moreland*, 568 F.Supp. 2d 674 (S.D. W.VA. 2008).  Finally, the advisory guidelines are now subservient to the statutory factors of 18 USC § 3553(a) and variances are within the general discretion of the court.

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

factors of 18 USC § 3553(a) conflicts sharply with a CHC VI characterization, a characterization that would ordinarily create substantial classification issues for Mr. Solondz within BOP. Accordingly, the defense requests a judicial recommendation/statement either that a departure/variance from the advisory guidelines is justified in part on the CHC VI grossly overstating Mr. Solondz' criminal history/propensity and that a BOP "management variable" from a CHC VI to a lesser category is appropriate, given the totality of circumstances.

> **3. The court should adopt the parties' joint recommendation as a reasonable sentence appropriate for the entirety of the circumstances of both the offense conduct and Mr. Solondz and which satisfies the purposes of § 3553(a), as clarified by recent Supreme Court guidance.[2]**

For reasons that follow, the sentencing purposes of 18 USC 3553(a) can be satisfied with the seven-year sentence proposed by the parties.

> **A. The nature and circumstances of the offense and history and characteristics of the defendant (§ 3553(a)(1))**

---

[2]Sentencing courts now have the authority and a Supreme Court mandate to impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing, to consider *all* of the characteristics of the offender and circumstances of the offense, to reject advisory guidelines that are not based on national sentencing data and empirical research, and to serve their function in the constructive evolution of responsible guidelines. *See United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 127 Ct. 2456 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007); *Kimbrough v. United States*, 128 S. Ct. 558 (2007). The court must calculate the sentencing guideline range and then determine the appropriate sentence for the individual defendant in light of the statutory factors of 18 U.S.C. § 3553(a). *Nelson v. United States*, 129 S.Ct. 890 (2009).

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

Justin Solondz, now 32 years of age, has always been intelligent, considerate, and idealistic with a developing interest in philosophy and religion, culture, and nature. In college he became actively involved in activities designed to address environmental violations. He joined clubs and peacefully protested offensive corporate activities. But he eventually grew disillusioned with seemingly ineffective and inadequate forms of social and political protest. He listened to older, more seasoned activists who he trusted and, without knowing the full rationale or the details of their plan, committed to a significant action that he thought would advance the cause of environmental protection.

That plan targeted the work of a University of Washington professor, Toby Bradshaw, who was believed to be engaged in genetically engineering poplar trees. Mr. Solondz did not know much about the subject but accepted the contention that genetically altered species endangered the ecological balance of nature. He was told, and accepted, that, to address the issue, the group planned to ignite small incendiary devices in Professor Bradshaw's office at the Center for Urban Horticulture. The resulting small fire would be handled promptly by the Seattle Fire Department, which had a station house nearby. It would be alerted to and able to douse the fire before extensive damage occurred. To be made a responsible participant, Mr. Solondz was assigned the task of helping construct the simple devices with others. Additionally, he would participate directly in the action by being a "lookout" for the others and acting as a getaway driver.

Of course, the plan backfired in a spectacular fashion, and a valuable, iconic public resource was completely destroyed with many people endangered and inconvenienced. The actual goal of making a notable public statement in favor of the environment morphed into the polar opposite consequence of completely discrediting the local activist fringes of the environmental movement. The mission was destined to fail for several reasons – faulty premises (Professor Bradshaw was not doing the work they thought he was doing and the concrete building they assumed would not burn very well was not actually made of concrete), reckless logic (depending on fire fighters to extinguish an explosive fire at some later time), and stunning political tone deafness (believing the public would be persuaded in their favor by an act of wanton, destructive violence). As one local wag characterized it, "they cut off their noses to spite their faces".

For Mr. Solondz the arson was a major wake-up call. He shared responsibility for a major environmental "action" but felt absolutely stunned at the tragic, destructive outcome and regretted it almost immediately. He has never been able to justify the group's action to himself or to anyone else. In the months following the arson, he broke off his social relationships with most people in the environmental underground. He began questioning his own sense of self-righteousness and turned more inward and introspective. His hubris and moral certainty gave way to a growing curiosity about the complexities and ambiguities of the world and people and about his own personal relationship to the world at large. What had once seemed to him

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

obvious, straight-forward, and black and white became decidedly less so.  He lost interest in political activities and began focusing on art, cultural pursuits, and travel.  By the time he learned of his indictment, in the spring of 2006, he had been traveling in Europe and Asia for almost a year, far removed in time and place from the social milieu he had once embraced.

While living and working in China (usually as an English tudor), he was arrested and prosecuted for manufacturing hash (done by extracting sifted resin from wild marijuana leaves).  He faced Chinese justice, including a trial where his testimony was compelled and a three-year prison sentence under harsh conditions that included being chained naked in a glass enclosed cell.[3]  For most of his confinement he was fed as long he met his daily quota of shelled peas.  Together with his earlier life, the Chinese prison experience has shaped his present character.

Mr. Solondz ("Justin" to his friends and family) has made a deep, positive impression on almost everyone who has ever known him.  The attached supporting letters, almost all from friends and family with general knowledge of his crime, provide astonishing affirmation of his character and vitality.   He is variously described by people who have known him most of his life as "peaceful",

---

[3]In the plea agreement the parties agree that any time the court imposes run consecutive to the Chinese prison time.  The defense requests the court impose seven years, taking into account all of Mr. Solondz' circumstances, including the harshness of his Chinese prison experience for an offense (essentially possession of 15 kg of marijuana leaves for personal consumption) that would hardly merit charging in our own federal system.

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

"compassionate and considerate", "generous", "respectful of others", honest, intelligent, idealistic to a fault, "truly unique" and "committed to righting all the wrongs of world." The writers provide striking examples of his literally feeding the disadvantaged hotel help, putting socially awkward classmates at ease, being respectful to his elders and a helpful role model to younger relatives, being the leader and peace broker on his high school soccer team and "friends with everyone across all cliques and cohorts", and, more recently, putting his safety and well-being at risk to argue the cause of a fellow Chinese prisoner being abused by the guards. No one who knows him believes he is a present or future threat to anyone.

Mr. Solondz' role in this arson, considered in full light of his personal background and characteristics support a sentence no higher than the joint recommendation of the parties.

### B. Sentencing purposes (§ 3553(a)(2)

> Deterrence, incapacitation, and rehabilitation are prospective and societal– each looks forward and asks: What amount and kind of punishment will help make society safe? In contrast, retribution imposes punishment based upon moral culpability and asks: What penalty is needed to restore the offender to moral standing within the community?

*United States v. Cole*, slip op., 2008 WL 5204441 *4 (N. D. Ohio Dec. 11, 2008).

### i. Seriousness of the offense

Section 3553(a)(2)(A) requires the court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A sentence that is excessive in light

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

of the seriousness of the offense and the full circumstances of the case does not promote respect for law or provide just punishment.

No one can seriously argue that a perceived ecological imperative or frustration with the political process as a tool for change justifies the violent destruction of public property or the endangerment of human life.  Everyone, Mr. Solondz included, agrees that this was a very serious offense, and he deeply regrets the harm he brought to other people and the community at large.  But his crime must be viewed through the prism of lapsed time, his clouded idealism and youthful immaturity at the time, and his clear change of attitude and outlook and social break from the environmental fringe since the crime.  These factors, considered with the punishment received by other coconspirators already sentenced, support the parties' recommended jail sentence as promoting respect for the law, being just punishment, and holding him fully accountable.

### ii.  Deterrence to Criminal Conduct

Section 3553(a)(2)(B) requires the court to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."   But the proper question for the court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime.  Here, the findings are uniformly negative:  increases in sentence length do not reduce crime through deterrence. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the

8

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

The point is especially pronounced in the case of Mr. Solondz. He had a life-long history as an peaceful, compassionate person, and then, eleven years ago, erred grievously in an act of misguided idealism. Although still very appreciative of nature and helping preserve it, he has long since abandoned his ties to the activist community, renounced protest – violent or otherwise, and focused on his interests in philosophy and culture. His time since the arson – even his bad experience with the Chinese criminal justice system – has largely been introspective, peaceful and non-violent. His abhorrence at the destruction of the his crime has forever deterred him from doing anything similar.

Other direct participants in this action have all been held publicly accountable[4], and conspirators in the wider conspiracy have generally been held to account in this district and elsewhere. The particular conspiratorial ring has largely been broken and disbanded. The government and the court have largely made the indelible point that this arson was reprehensible and completely counter to the way a civilized society deals with political differences. That is acknowledged with the case of Mr. Solondz, and no punishment greater than that contemplated in the plea agreement is necessary to advance any of the traditional goals of a high-profile sentencing.

---

[4]The possible exception is Wil1liam Rodgers, the mastermind of the UW arson, who committed suicide shortly after his arrest in 2005.

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

### iii. Protection of public from further crimes of defendant

Section 3553(a)(2)(C) requires the court to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." Since the arson, even including the time he recently spent in a Chinese prison, Mr. Solondz has carefully studied the writings of philosophers and social scientists and thereby gained insight into himself and his past actions. He now yearns to lead a simple existence, living inexpensively, reading his books, doing productive work in the community, and making a good faith effort to dent the enormous restitution obligation he faces. He is not a current or future threat to the community.

A seven-year sentence is more than adequate to "protect the public" from Mr. Solondz.

### iv. Rehabilitation in the most effective manner

Section 3553(a)(2)(D) requires the court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

While Mr. Solondz is prepared to accept the consequences of his actions and will use every opportunity in prison to further his education and be otherwise productive – including taking college correspondence courses and working while incarcerated – he already possesses the raw ingredients for self-motivation and productivity. While additional prison time is not necessary to "rehabilitate" him, the prison time he does receive could be best spent allowing him to further pursue his

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

education, and the statutory scheme permits the BOP some flexibility in this regard. See 18 USC § 3621(b)[5]. If provided the opportunity he believes he would excel in the New York-based Bard Prison Initiative (BPI), which allows incarcerated inmates to earn college degrees through a rigorous academic workload. Five state prisons in New York, in proximity to Mr. Solondz' extended family, cater to the Bard programs. More details are attached.

The defense requests a judicial recommendation to BOP for Mr. Solondz' placement in an appropriate penal facility – perhaps even a state facility in New York that meets federal standards – conducive to his participation in the BPI.

### C. Kinds of Sentences Available

Courts must now consider all of "the kinds of sentences available" by statute, §

---

[5] 18 USC § 3621(b) reads:

**Place of imprisonment** – The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise . . . that the Bureau determines to be appropriate and suitable, considering –
   (1) the resources of the facility contemplated;
   (2) the nature and circumstances of the offense;
   (3) the history and characteristics of the prisoner;
   (4) any statement by the court that imposed the sentence –
     (A) concerning the purpose for which the sentence to imprisonment
        was determined to be warranted; or
     (B) recommending a type of penal or correctional facility as appropriate.

11
Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

3553(a)(3), even if the "kinds of sentence . . . established [by] the guidelines" permit or encourage only prison. *See Gall*, 128 S. Ct. at 602 & n.11.

Mr. Solondz knows his own actions have placed him out of favor with society but is committed to earning his way back. He incorporates his argument from the previous section on rehabilitation.

### D. Consideration of Unwarranted Disparities

Section 3553(a)(6) requires the court to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Disparity gets its content from the purposes of sentencing. "Unwarranted disparity is different treatment that is unrelated to our legitimate sentencing goals or uniform treatment that fails to take into account differences among offenders that are relevant to our purposes and priorities." Paul J. Hofer, *Immediate and Long-Term Effects of United States v. Booker*, 38 Ariz. St. L.J. 425, 442 (2006).

Defendants with similar records convicted of similar conduct vary widely in their culpability, risk of recidivism, dangerousness, and rehabilitation needs. Courts must now take account of these variations, and uniformity for its own sake is no longer the goal of the sentencing system. *See Kimbrough*, 128 S. Ct. at 574 ("some departures from uniformity were a necessary cost of the remedy we adopted."). And the judge must consider "any unwarranted disparity created by the [guideline] itself." *Kimbrough*, 128 S. Ct. at 574; *see also id.* at 575 (approving judge's consideration of

the fact that the guideline "itself created an unwarranted disparity within the meaning of § 3553(a)").

At the tender age of 21 Mr. Solondz was, by several years, the youngest participant, and with the possible exception of his then-girlfriend Briana Waters, the least experienced activist, in the UW arson. Compared to the other participants he was not involved in conceiving the plan or its details and did not recruit anyone. He did not attend "book club" meetings where conspiratorial plots were hatched; he is more aptly viewed, at the time, as a misguided idealist who shortly afterwards saw the error of violent protest and abruptly changed his social circle and outlook. Unlike another defendant, who forced the government to trial and perjured herself while testifying, Mr. Solondz has calmly admitted his own involvement and resolved his case quietly. As a matter of personal pride, and unlike several other co-conspirators with far more criminal activist experience, he has not sought to gain any leverage or advantage at any other person's expense; he has not blamed the government for targeting him or claimed status as a political prisoner; he has not minimized his role in this offense nor posed as a martyr or cause celebre for any cause or movement. The one person perhaps most comparable to Mr. Solondz, except that he is older, more seasoned, more culpable, and apparently less repentant, is co-conspirator Daniel McGowan, who received seven years in the District of Oregon for committing *two* arsons, including the companion arson of the Jefferson Poplar Farm in Oregon on the same evening the UW arson occurred. Mr. Solondz acts now to keep his own personal

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

integrity but rejects the notion that he is keeping any integrity with or is even a part of any particular activist community. Suggestions to the contrary by others, of which there are several, are projections by them to further their agendas, not his.

Especially when compared with others similarly situated, a seven-year sentence would be consistent with the imperative to avoid unwarranted disparities.

**4. Conclusion**

Justin Solondz, a bright, personable idealist with a generous spirit, got caught up in youthful fervor for saving the planet and made a grievous mistake. He naively listened to older activists and, allowing his own blinding self-righteousness to obscure the obvious recklessness and irrationality of their plan, agreed to participate in an arson by helping build the devices and acting as lookout and getaway driver. Even if he thought the resulting fire would be contained before causing extensive damage, it was a terrible idea, which he fully acknowledges and regrets.

Almost eleven years later he faces judgment for his action. He is much wiser and more mature and views the world very differently. Although he is not a threat to anyone, he understands that he must be held legally accountable and serve some prison time. Despite the devastating personal setback that he brought on himself (along with the devastation leveled against innocents, which he acknowledges), his spirit has not been dimmed and he will eventually lead a free, productive life.

The court should accept and adopt the parties' joint seven year sentencing recommendation as its own.

Michael Nance
Attorney at Law
615 Second Avenue, Suite 760
Seattle, Washington 98104
(206) 624-3211

Submitted this 12th day of March, 2012.

/s/ Michael Nance
Attorney for Justin Solondz

**Certificate of Service**

I hereby certify that on the 12th day of March, 2012, I electronically filed the foregoing with the clerk of the court using the CM/ECF system. Notice of this filing will be sent electronically to counsel for other parties of record.

/s/ Michael Nance, WSBA # 13933
email: minance@aol.com
Attorney for defendant