Judge Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR05-5828RBL |
| Plaintiff, | |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| JUSTIN SOLONDZ, | |
| Defendant. | |

Comes now the United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Andrew C. Friedman and Thomas M. Woods, Assistant United States Attorneys for said District, and files this Government's Sentencing Memorandum.

## I. INTRODUCTION

Over ten years have passed since Justin Solondz helped destroy the University of Washington Center for Urban Horticulture. The scars from that night, however, have not fully healed. Solondz' actions caused over six million dollars in damage, as the entire building had to be scrapped and rebuilt. Solondz' actions placed the lives of firefighters at risk, as they struggled to contain the towering inferno that had engulfed the building. And they had the potential to put other persons at risk as well. Although the arson was timed to occur when no one was expected to be inside of the building, Solondz and his co-conspirators acted without any firm assurance that the building was empty.

Solondz' actions also dealt enormous setbacks to countless professors, researchers, and students, who saw years of hard work and research go up in flames. They destroyed a significant portion of an extensive library, which contained many rare texts and original research materials that could not be replaced. And they terrorized the occupants of the building and members of their families, many of who suffered long-lasting emotional impact from the arson.

In light of the terrible nature of his crime, the Government recommends that Solondz should be sentenced to 84 months' (that is, seven years') imprisonment. This term is proportionate to the sentences received by the other participants in the Horticulture arson, in light of Solondz' role in the crime, and of the fact that other participants, but not Solondz, cooperated with law enforcement in solving and prosecuting the crime. The Government recommends that Solondz also be sentenced to three years of supervised release, and that he be ordered to pay $6,092,649.95 in restitution, and $200.00 in special assessments.

## II.  FACTS

In approximately April 2001, William Rodgers recruited Solondz to participate in an arson at the University of Washington Center for Urban Horticulture. *See* Presentence Report ¶ 16 [hereinafter PSR]. Rodgers explained that the action was designed to target a particular professor's office. *See id.* Rodgers explained that he believed that the professor was involved in genetic engineering research regarding poplar trees, research that Rodgers found objectionable. *See id.*

Rodgers was part of a group known as the Family that acted under the umbrellas of the Earth Liberation Front ("ELF") and the Animal Liberation Front ("ALF"), underground organizations that purported to support the causes of the environment and of animal rights through "direct action," that is, arson and other crimes. *See id.* ¶ 15. Acting on behalf of ELF and ALF, this group had committed a string of highly dangerous and destructive arsons, including a 1998 arson that caused more than twelve million dollars in damage at a ski resort in Vail, Colorado. The group also had targeted facilities in the

Pacific Northwest, including by committing arsons at the Department of Agriculture National Wildlife Research Facility and at the Department of Agriculture Animal Damage Control Facility, at Olympia, Washington. In addition, the group had caused other serious property damage, including the destruction of crops and the release of animals. In total, the group had caused more than forty million dollars in damage across several western states. *See id*.

      Solondz agreed to help Rodgers, who also had recruited three others to help with the arson: Jennifer Kolar, Lacey Phillabaum, and Solondz' girlfriend, Briana Waters. *See* Plea Agreement ¶ 7. A separate team of five individuals -- Stanislas Meyerhoff, Daniel McGowan, Suzanne Savoie, Nathan Block, and Joyanna Zacher -- planned to burn a poplar tree farm at the same time in Clatskanie, Oregon, as part of a "double whammy" that was designed to garner increased media attention.

      In the days leading up to the arson, Solondz helped construct the incendiary devices that were to be used in the University of Washington arson. *See* PSR ¶ 17. The devices consisted of digital timers that triggered mechanisms that, in turn, ignited containers of fuel. *See* Plea Agreement ¶ 7. Solondz and others created these devices in a a "clean room" draped with plastic sheeting to minimize the chance that law enforcement would recover fingerprints, hair, or genetic material from the devices after they ignited, which the group had set up in a garage at the Olympia residence where Waters was residing at the time. *See* PSR ¶ 17.

      On the evening of May 20, 2001, Solondz drove with Rodgers, Phillabaum, and Waters from Olympia to Seattle in a rental car that Waters had secured under the name of a family member. *See id*. ¶¶ 17-18. They met Kolar in Seattle, and traveled to the University of Washington during the early morning hours of May 21, 2001. *See id.* ¶ 18. Solondz remained with the car to serve as the getaway driver and a lookout. *See id*. Waters hid in some bushes and also served as a lookout. *See id.* The others approached the building, and Rodgers actually entered the building and placed the incendiary devices to set fire to the professor's office. *See id.* Solondz then drove the group away from the

area. *See id.* The incendiary devices subsequently ignited, causing a massive fire that destroyed the Center for Urban Horticulture. *See id.*

In the wake of the arson, the group issued a communique bragging about their actions, as well as the tree farm arson that had occurred in Clatskanie, Oregon. The communique stated, "As long as universities continue to pursue this reckless 'science,' they run the risk of suffering severe losses. Our message remains clear: we are determined to stop genetic engineering." *See id.* The group also mocked the efforts of the firefighters who responded to the University of Washington arson, stating, "Although we placed these devices specifically to target [the professor's] office, a large portion of the building was damaged. This extensive damage was due to a surprisingly slow and poorly coordinated response from the fire department, which was evident by their radio transmissions."

The arson, along with the other actions committed by the broader group, remained unsolved for several years. In 2005, however, one of the members of the group who was involved in numerous arsons, but not the University of Washington arson, began cooperating with authorities. His cooperation lead to the discovery of other members of the group, who in turn revealed the identities of the individuals who were involved in the University of Washington arson.

Rodgers, the leader of the group, committed suicide following his arrest. *See id..* ¶ 9. Two of the other five arsonists, Kolar and Phillabaum, pled guilty to participating in the arson. *See id.* ¶¶ 7, 13. In 2007, Briana Waters proceeded to trial. At that trial, Kolar and Phillabaum testified against Waters, while Waters falsely testified that she had no involvement in the arson. Waters was convicted of two counts of arson, with the jury hanging on the remaining counts. On appeal, the Ninth Circuit vacated the convictions, holding that the trial court erred in admitting one exhibit. *See id.* ¶11. Prior to her retrial, Waters pled guilty, and agreed to cooperate, including by testifying against Solondz.

Solondz was traveling abroad when he learned that he was under investigation. *See id* ¶ 19. Solondz avoided returning to the United States in order to avoid prosecution.

*See id.* In early 2009, Solondz was arrested by Chinese authorities on drug-related charges. *See id.* ¶21. Solondz provided Chinese authorities a fake name, Isaac Hart. *See id.* Solondz' true identity subsequently was discovered. After being sentenced to three years for cultivating marijuana, and serving twenty-eight months of that sentence, Solondz was returned to the United States. *See id.* ¶¶ 38-39.

Solondz subsequently pled guilty to conspiracy, in violation of 18 U.S.C. § 371 and arson, in violation of 18 U.S.C. § 841(i), a crime that carries a five-year mandatory-minimum sentence. Under the terms of Solondz' plea agreement, both parties agreed to recommend a sentence of 84 months' imprisonment. Solondz also agreed in the plea agreement to pay restitution in the amount of $6,092,649.95, joint and several with the other defendants. Finally, Solondz also agreed to waive his right to appeal his sentence (provided that it is within or below his guidelines sentencing range).

Solondz also had been indicted in the Eastern District of California in connection with an arson that had occurred at Susanville, California, in October 2011. Solondz was indicted largely on the basis of the statements made by Meyerhoff, who helped organize the arson. However, Waters, who also was involved in the Susanville arson, and who has implicated Solondz in the University of Washington arson, has steadfastly maintained that Solondz had no involvement in the Susanville arson and was not even present at Susanville. As part of the plea agreement in this case, the United States Attorney's Office for the Eastern District of California has agreed to dismiss its charges against Solondz.

### III.   SENTENCING GUIDELINES

The government agrees with the Probation Office's calculation of the applicable Sentencing Guidelines, a calculation that Solondz does not dispute.

A.  **Base Offense Level**

Solondz has a base offense level of 24, pursuant to USSG § 2K1.4, because the fire created a substantial risk of death or bodily injury to the firefighters who responded to the arson, and also because the arson involved the destruction of a state facility and a place of public use.  *See* PSR ¶ 27.

B.  **Terrorism Enhancement**

Solondz is subject to a 12-point increase, because his offense involved "a federal crime of terrorism," as that term is defined under USSG § 3A1.4.  *See* PSR ¶ 29. Specifically, section 3A1.4 provides that "federal crime of terrorism" has the same meaning as it does under 18 U.S.C. § 2332b(g)(5).  That statute, in turn, defines "[f]ederal crime of terrorism" to mean conduct that violates any of a list of enumerated statutes, (including 18 U.S.C. § 844(i)) and that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," even if the conduct involves no risk of bodily harm.  *See generally United States v. Thurston*, 2007 WL 1500176, *12 (D. Or. May 21, 2007), *aff'd* 537 F.3d 1100 (9th Cir. 2008).

In this case, Solondz targeted a state university – that is a government facility – for the purpose of coercing government conduct, including government funding of genetic-engineering research.  Solondz and his co-conspirators' motivations were confirmed by the group's communique, which stated, "As long as universities continue to pursue this reckless 'science,' they run the risk of suffering severe losses.  Our message remains clear:  we are determined to stop genetic engineering."  The portion of the communique dealing with the Clatskanie tree arson also confirmed the group's motivations to coerce government policy:  "Pending legislation in Oregon and Washington further criminalizing direct action in defense of the wild will not stop us and only highlights the fragility of the ecocidal empire."  As a result, Solondz' crime falls squarely within the statutory definition of a "federal crime of terrorism."

Judge Burgess imposed this enhancement in the cases of Jennifer Kolar, Lacey Phillabaum, and Briana Waters.  The court in Oregon also imposed this enhancement in

cases involving arsons by other members of the Family who had targeted government buildings.  *See Thurston*, 2007 WL 1500176, *20 (D. Or. May 21, 2007), *aff'd* 537 F.3d 1100 (9th Cir. 2008); *see also United States v. Christianson*, 586 F.3d 532, 539 (7th Cir. 2009) (upholding enhancement against another member of ELF/ALF conspiracy).  The Court should impose the enhancement here as well.

**C.    Acceptance of Responsibility**

Solondz should receive a three-point reduction for acceptance of responsibility under USSG § 3E1.1, because he has accepted responsibility for his crime and pled guilty in a timely manner.  *See* PSR ¶ 31.

**D.    Conclusion**

Applying these factors, Solondz's total offense level is 33.  Solondz has no scored criminal history.  However, because the terrorism enhancement applies, he is treated as criminal history category VI.  *See* USSG 3A1.4(b); PSR ¶ 40.  Accordingly, his Guidelines range is 235-293 months.  *See* PSR ¶ 62.

### IV.    SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the government recommends that the Court sentence Solondz to 84 months' imprisonment.  The government believes that an 84-month sentence appropriately balances the factors set forth in 18 U.S.C. § 3553(a).

**A.    The Nature and Circumstances of the Offense**

As set forth above, the defendant committed a terrible crime, causing enormous economic damage and placing multiple lives at jeopardy.  Moreover, his conduct caused substantial professional, psychological, and other non-economic harm to the occupants of the Center for Urban Horticulture.  To take but three examples:

> C.C., a graduate student, submitted a victim impact statement that refers to "the years [her] graduation has been delayed" because of the destruction of her research and her laboratory, and that states that she has "irreversibly lost [] a basic trust of people."
>
> L.C.-S., a faulty member, submitted a victim impact statement that indicates that the arson resulted in the

1
2
3

> "destruction of [her] lab research career," and that she was "effectively forced to change jobs because [she] could no longer continue to do what [she] had come to UW and CUH to do." The statement also notes that the arson "terrified [her] children, who were 6 and 11 at the time."

4
5
6
7
8
9

> S.R., another professor, submitted a victim impact statement that indicates that she lost a year of work, and easily could have failed to get tenure, as a result of the fire. "Graduate students lost their work and had to postpone job offers and additional educational opportunities." S.R. notes that "[t]his violent act devastated us and . . . we, as individuals, will never fully recover. They took years away from us and changed how we look at our fellow human[] beings." S.R. also notes that she began having panic attacks immediately after the fire, and, ultimately, moved because of the fire because her residence was listed in the phone book.

Solondz claims that he intended only to destroy one professor's office. However, he acted knowing that there was a substantial risk that the damage would be far greater, as the devices contained substantial reserves of fuel. Solondz, moreover, played a far more significant role in the offense than did anyone but William Rodgers. He helped construct the devices, and served both as the getaway driver and a lookout. Moreover, his crime was not the result of a reckless, heat-of-the-moment decision. Solondz was approached about the arson approximately a month in advance. He spent substantial time planning the arson in the days before the action, taking care to complete his construction of the devices in a clean room. Finally, Solondz did not take immediate responsibility for his actions. Rather, he avoided prosecution by remaining abroad for years, and traveling under a fake identity.

B.   **The History and Characteristics of the Defendant**

At the time of the offense, Solondz had great promise. By all accounts, he is a very bright and inquisitive person. He was enrolled in an elite college, and had two supportive parents. Instead of pursuing a legitimate path, Solondz committed the offense, and then later went on the run, living in anonymity in China in an attempt to avoid prosecution. In China, he became involved in drug manufacturing, leading to hard time

in a Chinese jail. Although Solondz clearly had the opportunity to be a productive member of society, his own choices to date have been anything but that.

C. **Defendant's Guidelines Sentencing Range**

As noted above, Solondz' advisory sentencing range under the Sentencing Guidelines is 235- 293 months. This range is based in substantial part upon the fact that Solondz' crime qualifies as a "federal crime of terrorism." The government is recommending a sentence that is roughly a third of this range based, in substantial part, upon the recognition that Solondz' crime, while extremely serious, is qualitatively different from a crime intended to result in injury or death. Nevertheless, Solondz' high sentencing guidelines range counsels a substantial sentence, and the government's 84- month recommendation is designed to achieve such a sentence

D. **The Need to Avoid Unwarranted Disparity Between Defendants**

An 84-month sentence also will punish Solondz appropriately relative to the other participants in his crime. Solondz played a greater role than any of the three other defendants who have been, or will be, sentenced in connection with the University of Washington arson. Solondz made the incendiary devices that were used to commit the arson, and he served both as a lookout and a getaway driver. Thus, Solondz' involvement was more significant than any of Kolar (who cut the glass on a window), Phillabaum (who helped carry materials), or Waters (who arranged for a rental car and served as a lookout). Only Rodgers, who committed suicide rather than face prosecution played a greater role than Solondz.

In addition, Solondz is the only defendant who has been, or will be, sentenced who did not provide substantial assistance in the investigation and/or prosecution of the case. Both Kolar and Phillabaum testified at Waters' trial. And Waters entered into a plea agreement under which she agreed to cooperate, and she would have testified at Solondz' trial, had Solondz chosen to contest the charges against him. As a result, Solondz is not entitled to the downward departure that each of the other defendants has received, or likely will receive.

So far, Kolar has been sentenced to 60 months' imprisonment for her participation in three arsons, and Phillabaum to 36 months' imprisonment for her participation in the University of Washington arson (the only arson in which she participated). Waters' plea agreement provides that both parties will recommend a sentence of 48 months' imprisonment in her case.[1]

An 84-month sentence for Solondz will appropriately reflect the facts that (1) Solondz played a more significant role in the arson compared to the others, given that he constructed the devices that were used to destroy the building, and (2) unlike each of his co-defendants, Solondz neither sought to provide, nor actually provided, any significant assistance in the investigation and/or prosecution of the case that would support a downward departure from the otherwise-appropriate sentence in the case.

**E.     Deterrence and Respect for the Law.**

Finally, an 84-month sentence will also serve the goals of ensuring that Solondz does not return to a life of crime, and that others will be dissuaded from engaging in property destruction as part of a misguided effort to further their political causes. It also will promote respect for the law, reflecting the tremendous harm that the community has suffered as the result of Solondz' crime. A lesser sentence might well fail to achieve these objectives.

---

[1] The plea agreement contemplated circumstances under which the parties would reduce their recommendation to 36 months if Waters had been able to lead authorities to new, independent corroborating evidence. Those circumstances did not come to pass, and the parties will be recommending a sentence of 48 months of imprisonment for Waters.

## V. **CONCLUSION**

For the foregoing reasons, the Court should sentence Solondz to 84 months' imprisonment, to be followed by three years of supervised release, and should order Solondz to pay $6,092,649.95 in restitution, and $200.00 in special assessments.

DATED this 12th day of March 2012.

          Respectfully submitted,

          JENNY A. DURKAN
          United States Attorney

          s/ Andrew C. Friedman
          ANDREW C. FRIEDMAN
          Assistant United States Attorney

          United States Attorney's Office
          700 Stewart Street, Suite 5220
          Seattle, Washington 98101
          Phone:    206-553-2277
          Fax:    206-553-2422
          E-mail:    andrew.friedman@usdoj.gov

          s/ Thomas M. Woods
          THOMAS M. WOODS
          Assistant United States Attorney

          United States Attorney's Office
          700 Stewart Street, Suite 5220
          Seattle, Washington 98101
          Phone:    206-553-4312
          Fax:    206-553-0755
          Email:    thomas.woods2@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

DATED this 12th day of March, 2012.

s/ Andrew C. Friedman
ANDREW C. FRIEDMAN
Assistant United States Attorney